UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT A. CRAMER,

      Plaintiff,                                  Case No. 06-15651

v.                                                  Honorable John Corbett O'Meara

GENERAL MOTORS CORPORATION,
EMPLOYEE BENEFIT PLANS
COMMITTEE, GENERAL MOTORS
SEVERANCE PLAN, and GENERAL
MOTORS SALARIED EMPLOYEES
PENSION PLAN,

      Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' APRIL 4, 2008 MOTION FOR SUMMARY JUDGMENT

This matter came before the court on Defendants' April 4, 2008 motion for summary judgment. Plaintiff Robert A. Cramer filed a response May 30, 2008; and Defendants filed a reply June 4, 2008. Oral argument was heard July 10, 2008.

### BACKGROUND FACTS

Plaintiff Robert Cramer was employed by defendant General Motors Corporation ("GM") for 31 years as an engineer. During the last two years of his employment, his title was Specification Analyst in the Release Documentation Department. Plaintiff was a highly compensated, valued employee of GM who consistently earned high performance reviews.

As a salaried GM employee, Plaintiff participated in the GM Retirement Program for Salaried Employees. Under the Program, employees were eligible for retirement upon completion of 30 years of credited service regardless of age. By December 2005, Plaintiff met the eligibility

requirements and qualified to retire and immediately receive benefits. He decided to retire voluntarily with benefits beginning April 1, 2006, after he used his remaining vacation time.

Also in December 2005, GM announced the New GM Severance Program to "provide benefits to classified salaried employees separated as a result of workforce reductions made under GM Staffing Reduction Policy." Ex. C at 2. The Program text makes clear that benefits are available only for GM salaried employees at work on or after December 31, 2005, who are "designated by the Corporation as separated pursuant to the Corporation Policy on staffing reductions . . . ." Ex. D at 32.

In December 2005, Plaintiff met with his financial advisor to explore whether he was in a position to retire. Plaintiff ascertained that he had savings of approximately $1,000,000 which would generate about $2,000 per month. Along with his retirement benefits under the GM Retirement Program, Plaintiff estimated that he would have an annual income of over $63,000.

During the second or third week of January 2006, Plaintiff attended a meeting with Lyndon Lie, a department director. At that meeting Plaintiff learned there would be an upcoming reduction in force and that GM was not currently offering any retirement incentives. After the meeting Plaintiff met with Vicki Kordel, his immediate supervisor, who confirmed that no retirement incentives were being offered and also that Plaintiff would not be selected for the reduction in force. At that point it was Plaintiff's understanding that severance benefits would be offered to low performers only, and he has acknowledged that he was not a low performer. Cramer dep. At 38-39.

Subsequent to his meeting with Kordel, Plaintiff met with Bonnie Appell, his group manager. She too advised Plaintiff that he would not be selected for the upcoming reduction in force and was not eligible for severance benefits. Plaintiff completed the paperwork necessary for retirement

2

February 20, 2006, his last day of work, at which time Plaintiff claims Appell assured him again that other employees who retired would not be getting severance benefits. Plaintiff testified, "On February 20, 2005 [*sic*], my last work day before using up my vacation time, I left GM. On that very last day, I again spoke to Bonnie Appel [*sic*] and told her I did not want to find out about retirement packages two weeks after I retired. She again said there were no retirement packages available. On February 20, 2006, I signed my retirement papers." Cramer aff. at ¶ 10. Plaintiff's affidavit does not say that he received assurances that no other retiring employees would be receiving severance benefits.

Defendants concede that certain employees who were eligible to retire volunteered to be considered in the reduction in force in March 2006. However, not all who volunteered were accepted. For example, Ron Turnbell, who had told Plaintiff he intended to volunteer for the upcoming reduction in force, was not selected for the reduction. He voluntarily retired effective August 1, 2006, with no severance benefits or enhanced retirement benefits. Only six of nine employees who volunteered for the reduction were retired with severance benefits. Appell and others have testified that Plaintiff would not have qualified for the reduction because he was highly skilled (more so than others who were part of the reduction), had previous experience as a test engineer, would be difficult to replace, and was a GMI graduate. Appell dep. at 40-41, 79.

In the spring of 2006, Plaintiff became aware of the others in the Release Documentation Department who had volunteered for and had been granted the reduction in force, complete with a severance package which included 15 months' pay. In May 2006, Plaintiff sent a letter to Bashen Consulting, an independent company that reviews complaints under the GM Open Door Procedure and makes recommendations to GM, and complained that he had been misled into retiring before

3

he would have been able to take advantage of the severance benefits. After Bashen advised GM that GM had not acted inappropriately, Plaintiff appealed to the GM Employee Benefits Plans Committee, which upheld the original decision.

Plaintiff's claim is based on the premise that he should have been selected for the upcoming reduction in force and not been advised to retire when he did. Plaintiff claims Defendants breached their fiduciary duties by failing to advise him to hold off his retirement plans in order to take advantage of the offer that was subsequently given to others in his department.

## LAW AND ANALYSIS

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Claims for breach of fiduciary duty, however, require no deference to any plan administrator's action or decisions. Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 427 (6th Cir. 2006). In order to show a breach of fiduciary duty, a plaintiff must show the following: 1) material misrepresentations were made, 2) the defendant was acting in a fiduciary capacity when the material misrepresentations were made, and 3) the plaintiff relied upon those misrepresentations to his or her detriment. Id. at 443.

In this case no material misrepresentations were made to Plaintiff. There simply were no retirement incentive packages offered at the time he retired. Although Plaintiff may be frustrated because five other people whom he claims were in the same position he was received severance packages just weeks after he retired, he has presented no evidence to show that he would have qualified for the reduction in force. Instead, there is deposition testimony from all of the GM

4

supervisors that Plaintiff would not have been given the reduction in force status. One of Plaintiff's closest comparables was Ron Turnbell, who volunteered for the reduction but was not selected. Importantly, Plaintiff's own deposition testimony confirms that Plaintiff knew his performance ratings were "typically superior." Cramer dep. at 15. Plaintiff also had an understanding of what the program's eligibility conditions were as shown by the following excerpt from his deposition:

"The understanding I had at that point was that it was being offered to low performers."

"You weren't a low performer, were you?"

"Not that I knew of." Cramer dep. at 38-39.

Under these circumstances, the court finds that Plaintiff has failed to show that GM made material misrepresentations at the time he decided to voluntarily retire. Therefore, Defendants are entitled to summary judgment.

## ORDER

It is hereby **ORDERED** that Defendants' April 4, 2008 motion for summary judgment is **GRANTED.**

s/John Corbett O'Meara
United States District Judge

Date: July 30, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 30, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager